UNITED STATES *v.* MADEIRA LINEN IMPORTING CO. (No. 3440)[1]

United States Court of Customs and Patent Appeals, November 2, 1931

*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell* and *Ralph Folks,* special attorneys, of counsel), for the United States.
*Curie, Lane & Wallace* for appellee.

[1] T. D. 45246.

[Oral argument October 6, 1931, by Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported certain linen goods at the port of New York. These were classified by the collector as towels composed wholly or in chief value of flax, hemp, or ramie, under paragraph 1014 of the Tariff Act of 1922.

The importer, by its protest, claims the goods to be dutiable as manufactures of vegetable fiber other than cotton, under paragraph 1021 of said act, with alternative claims under paragraphs 1459 and 1460 thereof.

The United States Customs Court sustained the protest under said paragraph 1021, and the Government has appealed.

It is admitted that the merchandise is wholly or in chief value of flax and that it contains less than 120 threads to the square inch.

The Government claims, as grounds for reversal, that the articles in question are kitchen towels, as classified by the collector, and that they are so in the common meaning of the word and were commercially designated as such at the time of the enactment of the Tariff Act of 1922.

On the other hand the appellee claims that the articles of importation were purchased as parts of sets of scarfs; that they were used as covers for refrigerators, tables, sideboards, and like purposes, and were not used for towels; that they are neither towels within the common meaning of the term nor commercially so designated.

The testimony and the samples and exhibits show that the particular article here involved is approximately 34 inches in length and 17 inches in width, with one of the long edges selvedged and the three other sides finished with a hem. The material is the ordinary color of undyed linen, and, surrounding the margin of the article and about 2 inches distant therefrom, are borders or ornamental stripes made of blue, which cross each other at the corners. The uncontradicted testimony shows that the material out of which these articles are made is woven in double width, in long strips, by a loom, and that the material is cut from the strips, leaving three rough edges which are hemmed, as aforesaid.

The testimony as to the nature and use of these articles is conflicting. On the part of the importer four witnesses were called, Joseph Hafif, member of the importing firm; Sam Cohen, the manager of a linen shop in Youngstown, Ohio; Sam Serouya, employed with the Japanese Garment Importing Co., the manager of certain linen stores; and Irving S. Cohen, engaged in the linen business at Columbus, Ohio.

Hafif testified that the articles of importation were imported as parts of sets, which sets consisted of three scarfs, one, the article of

importation, 17 inches by 34 inches; a second, 17 inches by 43 inches; and a third, 17 inches by 52 inches. He testified, further, that 75 per centum of all of these articles, which were sold by him during the five or six years prior to his testifying, were sold in sets; that occasionally a single article would be sold to a purchaser, but not ordinarily.

These four witnesses testified, in substance, that the articles were not towels; that they were sold and used as scarfs and as parts of sets—one witness testifying to sales of the same for such purposes for approximately eight years.

No attempt was made by the importer to prove commercial designation.

On the other hand, the Government called three witnesses, Frank S. Stanley, department manager of Herman & Co., linen importers; Louis J. Goldberger, importer of household linens at New York City; and Mary A. Hannon, buyer of towels for James A. Hearne & Co.

The witness Stanley testified that he had sold merchandise *like* the imported article, and that the merchandise he had so sold was commercially designated as kitchen towels. He also testified that the articles which he had so sold were used for kitchen towels, but admitted that he had seen them used on the tops of refrigerators and for similar purposes. The chief use, however, of the article, according to this witness, was as towels.

An illustrative Exhibit D represented the class of articles which the witness Stanley had in mind. It is of similar material to the articles of importation, is about 33 inches by 21 inches, has the two long sides finished with selvedged edges, and is hemmed on the short sides. It has a blue border similar to the imported articles.

The witness Goldberger testified that he had bought and sold merchandise *like* the imported articles. He stated that these articles were commercially designated at the time of the enactment of the Tariff Act of 1922, as towels, and that they are so used. This witness did not produce a sample of the towels so sold by him but testified, in a general way, that they were similar to the articles of importation.

The witness Hannon testified that the store in which she is employed sells the articles of importation in the toweling department and has been so selling them for eight years; that they are sold and used as dish towels. In illustration of the articles which she said were so sold, she produced a sample made of similar material to the articles of importation, about 16¾ inches in width and 32 inches in length. This article had also a blue border stripe, similar to the articles of importation, and had its long sides finished with selvedged edges, and its two short sides were hemmed.

The testimony offered by the Government as to commercial designation is much weakened by the fact that two of the witnesses testified as to articles which differ from the articles in question here. The other witness testified as to articles which he said were *like* the imported articles. A further circumstance to be considered in this connection is that the articles, concerning which said witnesses were testifying, were sold and used for purposes within the common meaning of the word "towel."

The case was submitted upon this testimony and the exhibits. No objections were made by the Government to the testimony of the importer's witnesses, hereinbefore referred to, on the grounds that such testimony related to a common meaning and use of the imported articles at some time subsequent to the enactment of the Tariff Act of 1922, nor is there any assignment of error specifically covering this point. The case was tried below on the theory that the proof offered by the importer was proper and material in this respect. This is made more evident by the Government's fourteenth assignment of error, which is as follows:

14. In finding and holding directly or by implication that the merchandise is used as a scarf, and as such is dutiable as a manufacture of vegetable fiber, not specially provided for, under paragraph 1021, *without proof that such merchandise was chiefly used as scarfs throughout the United States at or immediately prior to the time of importation.* (Italics ours.)

The case is not free from doubt. The United States Customs Court has heard the evidence and has come to its conclusion as to the facts. We are not able, from our examination of this record, to say that its conclusion is erroneous.

The judgment of the United States Customs Court is *affirmed.*